RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JILL P. BROSS, ET AL | CIVIL ACTION NO. 06-1523 |
| VERSUS | JUDGE DOHERTY |
| CHEVRON U.S.A., INC., ET AL. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court is "Chevron U.S.A., Inc.'s Motion for Summary Judgment Based Upon Open and Obvious Condition of the Zulu Structure" [Doc. 126] filed by defendant Chevron U.S.A., Inc. ("Chevron"). Chevron seeks summary judgment and a dismissal "of the Complaints of plaintiffs and intervenor" the Louisiana Workers Compensation Corporation on grounds "it is undisputed that the hole that decedent, Alan Bross, fell through on the cellar deck of Chevron's Zulu Structure was an open and obvious condition for which Chevron owed Mr. Bross no legal duty to warn him of or to correct, as a matter of law." Additionally, and alternatively, Chevron contends the undisputed facts show "Chevron discharged its duty to warn Mr. Bross of the conditions of its Zulu Structure, including the missing grating that created the hole in the cellar deck through which Mr. Bross fell." The motion is opposed by plaintiffs Jill P. and Kacey Lee Bross [Doc. 187].[1]

For the following reasons, this Court concludes there are genuine issues of material fact that preclude the entry of summary judgment on the instant motion. Consequently, "Chevron U.S.A., Inc.'s Motion for Summary Judgment Based Upon Open and Obvious Condition of the Zulu Structure" [Doc. 126] is DENIED in its entirety.

---

[1] *See also* the pocket briefs of the parties filed by order of the Court in connection with the instant motion, at Doc. 185 (plaintiffs) and Doc. 190 (Chevron).

## I. The Undisputed Facts

The undisputed facts that are materially relevant to the instant motion are as follows: This Court has previously addressed the unique employment status of Mr. Bross in a prior ruling of the Court. Mr. Bross was an employee of Qualitech Services, Inc. ("Qualitech"). By virtue of a Master Service Contract between Qualitech and Chevron, Mr. Bross – as Qualitech's only employee providing services for Chevron – provided supervisory diving services for Chevron, supervising Chevron's contract diving crews and supervising the vessels on which the divers worked. Specifically, Mr. Bross supervised and oversaw divers who performed pipeline inspection and repair work for Chevron, including assigning work to and supervising Chevron's contract divers engaged in subsea pipeline inspections, repair and relocation in Chevron's Bay Marchand Field and directing vessels from which the dive crews worked. Although Chevron has argued Mr. Bross was its borrowed employee, this Court has held he was more akin to an independent contractor.

On February 28, 2006, Alan Bross traveled to Chevron's Zulu platform, located in the Grand Isle Area, Block 37, in the Gulf of Mexico on the Outer Continental Shelf. The Zulu platform is one of approximately 130 platforms and structures that Chevron owns in its Bay Marchand Field. The entire Bay Marchand Field and virtually all of its platforms and pipelines had been previously damaged by Hurricanes Katrina and Rita.

Captain Dallas Toups ("Captain Toups") transported Mr. Bross to the Zulu platform on the M/V MR. CLINT ("MR. CLINT") and remained on the vessel while Mr. Bross boarded the platform at the boat landing. Shortly thereafter, Mr. Bross fell approximately 20 feet from the cellar deck of the platform, striking his head on the platform's boat landing and falling into the water. After being unable to retrieve Mr. Bross from the water by himself, Captain Toups traveled to another platform

to get help. Mr. Bross was eventually pulled onto the MR. CLINT and transported to a hospital in Galliano, Louisiana, where he was pronounced dead as the result of a skull fracture.

At the time of Mr. Bross's death, the Zulu platform and all facilities at the Bay Marchand Field were classified as inactive or out of service, however, the Zulu platform was not officially closed, was not marked as such with warning signs, barricades, or warning tape to alert personnel the structure was unsafe for boarding, and access to the platform had not been restricted by Chevron.

## II. The Disputed Facts

The material disputed facts, for purposes of this motion, focus on two main issues. The first disputed fact is whether Mr. Bross fell through an open hole on the platform's cellar deck, and if he did, whether that hole was open and obvious, as Chevron contends, or whether Mr. Bross fell through defective grating that gave way when Mr. Bross stepped on it. Plaintiffs contend because there were no eyewitnesses to the actual accident itself, there is simply no definitive evidence as to how the accident occurred – whether Mr. Bross fell through an open hole or fell through defective grating – and either scenario is just as likely. Considering the foregoing, plaintiffs contend summary judgment is inappropriate on the open and obvious question at this juncture.

The second material disputed fact is whether Mr. Bross was warned not to go to the Zulu platform on the day of his death. Chevron contends he was – and introduces evidence so showing – while plaintiffs contest this fact. In addition to introducing its own evidence showing there is an *absence* of evidence Mr. Bross was so warned, plaintiffs offer evidence of inconsistencies in the testimony of Chevron's witnesses who state they personally warned Mr. Bross not to go to the platform.

With these disputed facts before the Court -- which will be discussed in further detail below

– the Court will now consider the motion.

**III.  Law and Analysis**

    **A.  Summary Judgment Standard**

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> . . . .
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

### B.     Jurisdiction

Plaintiffs' complaint alleges alternative causes of action against Chevron under Louisiana law, the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §761(a), and as a borrowed employee of Chevron under the Jones Act. Since the filing of plaintiffs' original complaint, plaintiffs have dismissed their Jones Act and DOSHA claims.

Because Mr. Bross's injury occurred on a fixed platform located on the outer continental shelf off the coast of Louisiana, federal jurisdiction in this matter is based, in part, on the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 et seq. "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); see also 43 U.S.C. § 1333(a)(2)(A). The parties do not dispute the applicability of Louisiana law to the plaintiffs' negligence claims against Chevron.

### C.     Substantive Law

Chevron seeks summary judgment on grounds it is undisputed the hole the decedent, Alan

Bross, fell through on the cellar deck of Chevron's Zulu platform was an open and obvious condition for which Chevron owed Mr. Bross no legal duty to warn him of or to correct, as a matter of law. Additionally, and alternatively, Chevron contends the undisputed facts show Chevron discharged its duty to warn Mr. Bross of the conditions of its Zulu structure, including the missing grating that created the hole in the cellar deck through which Mr. Bross fell.

Chevron's potential liability is predicated on the concepts of fault and negligence under Article 2315 of the Louisiana Civil Code.[2] In order to determine whether liability exists under the facts of a particular case, Louisiana courts have adopted a duty-risk analysis, which takes into account the conduct of each individual party and the peculiar circumstances of each case. *Pitre v. Louisiana Tech University*, 673 So.2d 585, 589-90 (La.1996). The relevant inquiries are:

(1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Whether the requisite duties were breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
(5) Were actual damages sustained?

*Pitre*, 673 So.2d 589-90, *citing Socorro v. City of New Orleans*, 579 So.2d 931, 938-39 (La.1991) (citations omitted). If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable. *Pitre*, 673 So.2d at 590.

A landowner owes a plaintiff a duty to discover any unreasonably dangerous condition and

---

[2] Article 2315(A) of the Louisiana Civil Code states:

> A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

LA. CIV. CODE ART. 2315(A) (West 2009).

-7-

to either correct the condition or warn of its existence. *Id.* at 590-91, *citing Socorro*, 579 So.2d at 939, *citing Shelton v. Aetna Casualty & Surety Company*, 334 So.2d 406, 410 (La.1976). It is the court's obligation to decide which risks are unreasonable, based upon the facts and circumstances of each case. *Pitre*, 673 So.2d at 591, *citing Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La.1984). It is undisputed Chevron was the owner of the Zulu platform at the time of Mr. Bross's accident and resulting death.

In *Pitre*, the Louisiana Supreme Court discussed its prior ruling in *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La.1988).[3] In *Murray*, the decedent sustained fatal injuries after striking his head upon the bottom of a Ramada Inn swimming pool while diving. Plaintiffs, the decedent's wife and children, instituted a wrongful death action against the companies that franchised, owned and operated the motel, and their respective liability insurers, alleging liability based on negligence and strict liability. The Court initially held the absolute defenses of assumption of the risk and contributory negligence were no longer viable as they had been subsumed by comparative fault principles. *Murray*, 521 So. 2d at 1125 & 1134. The *Murray* court went on to emphasize the plaintiff's subjective awareness of the risk is not the Court's focus when analyzing whether a defendant landowner has a duty to protect a plaintiff from an unreasonably dangerous condition on defendant's land; rather, the focus is *whether the defendant breached the standard of care owed to*

---

[3] This Court notes the *Murray* case originated in the United States Court of Appeals for the Fifth Circuit, 821 F.2d 272, and was certified to the Louisiana Supreme Court for determination of the question of "whether the assumption of the risk doctrine serves as a total bar to recovery by the plaintiff in a negligence case or only results in reduction of recovery under Louisiana's comparative negligence statute." The Louisiana Supreme Court noted although the Fifth Circuit phrased the question in terms of a "negligence case," the defendants were found strictly liable by a jury under Article 2317 of the Louisiana Civil Code, as custodians of a pool that was unreasonably dangerous because of the absence of warnings signs and a lifeguard. The Louisiana Supreme Court stated, however, that its answer to the certified question "would be the same regardless of whether the jury's finding was based on negligence or strict liability," stating, "[f]or reasons set forth in the body of the opinion, assumption of risk should not be available as a total bar to recovery in either instance." *Murray*, 521 So. 2d at 1126 n.1.

*the plaintiff.*

In *Murray*, the defendants raised the defense of "no duty" to protect the decedent from a danger of which he had knowledge. The Court rejected the defendants' argument, explaining:

> If accepted, defendants' argument would inject the assumption of risk doctrine into duty/risk analysis "through the back door." By that, we mean that the argument attempts to define the defendant's initial duty in terms of the plaintiff's actual knowledge, and thereby seeks to achieve the same result which would be reached if assumption of risk were retained as a defense, i.e., a total bar to the plaintiff's recovery.
>
> A defendant's duty should not turn on a particular plaintiff's state of mind, *but instead should be determined by the standard of care which the defendant owes to all potential plaintiffs.*

*Murray*, 521 So.2d at 1136 (emphasis added).

The *Murray* Court went on to differentiate between the defendants' argument regarding the plaintiff's subjective knowledge of the danger, and the potential argument that a duty is not owed when the complained-of condition is obvious and apparent to all:

> Again, this is not to say that a duty is owed or breached in all situations that involve injury. We have held, for example, that the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, *unreasonably* dangerous. *See, e.g., Shelton v. Aetna Casualty & Surety Co.*, 334 So.2d 406, 410-11 (La.1976). *However, the key to a finding of no liability in such cases is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody. The determination of what the plaintiff knew regarding the risk of injury is made after fault on the part of the defendant has been established, and is governed by the comparative fault principles ennunciated [sic] in La.Civ.Code art. 2323.*[4] *(Italics in original.)*

---

[4] Article 2323 of the Louisiana Civil Code states:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether

*Murray*, 521 So.2d at 1136.

Considering the *Murray* court's ruling, in *Pitre*, the Louisiana Supreme Court stated:

> Thus, the obviousness and apparentness of a potentially dangerous condition **are relevant factors to be considered under the duty-risk analysis.** If the facts of a particular case show that the complained of condition should be obvious to all, the condition *may* *not be unreasonably dangerous* and *the defendant may owe no duty to the plaintiff.*

*Pitre*, 673 So.2d at 591, *citing Socorro v. City of New orleans*, 579 So.2d 931, 942 (La. 1991), and *Murray*, 521 So.2d at 1137.

With the foregoing in mind, this Court notes Chevron makes two main arguments in the instant motion for summary judgment: (1) Chevron had warned Mr. Bross about the condition of the Zulu platform on February 28, 2006, prior to Mr. Bross traveling to the platform, therefore, Mr. Bross knew the platform was "off limits" and had not been repaired; and (2) the hole created by the missing grating on the cellar deck of the platform was an open and obvious condition. Based on the foregoing, Chevron argues it owed Mr. Bross no duty to warn about the condition of the platform or to correct that condition. This Court will consider each argument in turn.

---

the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B.  The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

LA. CIV. CODE ART. 2323 (West 2009).

1. **Chevron had warned Mr. Bross about the condition of the Zulu platform**

Chevron contends Mr. Bross knew about the condition of the Zulu platform prior to the time he traveled to it on February 28, 2006, both because of his job responsibilities for Chevron as a supervisor of Chevron's dive crews and because he had been specifically warned about the condition of the platform. Chevron contends Glenn Williams and Tab Guidry, two Chevron employees, specifically warned Mr. Bross there was no need to go to the Zulu platform on February 28, 2006, because skillets were going to be inserted into the subsea valve on the Whiskey Pipeline, which would isolate the Whiskey Pipeline from the pipeline running from the Zulu platform. Chevron contends Mr. Guidry further advised Mr. Bross it was unsafe to go to the Zulu platform because the platform was missing grating and handrails after Hurricanes Katrina and Rita.

Plaintiffs hotly dispute Mr. Bross was warned not to go to the platform, noting there is no evidence Messrs. Williams and Guidry warned Mr. Bross not to go to the platform on February 28, 2006. Plaintiffs contend the Minerals Management Services ("MMS") interviewed several Chevron employees in the Bay Marchand Field after Mr. Bross's death and concluded none of them had warned Mr. Bross of the dangerous condition of the Zulu platform. Plaintiffs further offer as evidence the "MMS Investigation of Fatality," which does not contain any information showing any Chevron employee warned Mr. Bross not to travel to the Zulu platform because it was unreasonably dangerous. The MMS Report concluded "[w]e have no way of knowing if Mr. Bross was aware of the condition of the structure."[5]

Furthermore, plaintiffs contend the testimony of Messrs. Williams and Guidry regarding their conversations with Mr. Bross on the day of his death contain certain inconsistencies that render their

---

[5] *See* Exhibit "D," attached to plaintiffs' opposition to Chevron's motion for summary judgment, Doc. 187.

testimony not credible. Specifically, Mr. Guidry testified he warned Mr. Bross early in the morning – around 7:00 a.m. – on February 28, 2006 that Mr. Bross did not need to travel to Zulu because Mr. Williams had already made the decision to insert a skillet into the subsea valve. However, Mr. Williams testified the decision to insert a skillet was not made until a lunch meeting on February 28, 2006.[6] Thus, plaintiffs have called into question the credibility of the testimony of Messrs. Williams and Guidry.

Chevron acknowledges the foregoing inconsistencies, but avers they are not "material to the relevant issue" – that is, whether Mr. Bross was warned not to go to the platform, and further contends "plaintiffs do not, and cannot dispute" the material fact that Mr. Bross was, in fact, warned not to go to the Zulu platform on the day of his death. The Court finds this argument unpersuasive. First, this Court notes the only person who can confirm or deny that he was, in fact, warned not to go to the Zulu platform on February 28, 2006 is Mr. Bross, and he is deceased. That is, plaintiffs cannot prove a negative. However, plaintiffs have pointed to inconsistencies in the testimony of Chevron's witnesses, calling into question the credibility of these witnesses. "[C]redibility determinations are not part of the summary judgment analysis." *Little*, 37 F.3d at 1075. As this disputed fact – whether Mr. Bross was warned not to go to the Zulu platform on the date of his death – turns, in part, on the credibility of the witnesses offered by Chevron, summary judgment on the issue is inappropriate.

Notwithstanding the foregoing, however, whether Mr. Bross was warned not to travel to the Zulu platform focuses on *the subjective awareness of Mr. Bross*, an improper focus of the inquiry

---

[6] *See* Exhibit "E," Deposition of Glenn Williams, at pp. 76-83; Exhibit "F," Deposition of Tab Guidry, at pp. 37-41, 115-120; and Exhibit "H," Feb. 28, 2006 "Field Notes" of Glenn Williams, all attached to plaintiffs' opposition to Chevron's motion for summary judgment, Doc. 187.

into whether Chevron owed Mr. Bross a duty *vis-a-vis* the condition of the platform. For the reasons that follow, this Court concludes the focus is more properly placed on whether Chevron conformed to the standard of care it owed to Mr. Bross *vis-a-vis* the condition of the platform, all as explained hereinbelow.

### 2. The hole created by the missing grating on the cellar deck of the platform was an open and obvious condition

Chevron contends it is undisputed the hole created by the missing grating on the cellar deck of the platform was an open and obvious condition, and, therefore, Chevron had no duty to warn Mr. Bross of the condition of the platform or to correct the condition. Chevron also offers the following evidence in support of its contention the hole was open and obvious:

1. The April 23, 2009 Unsworn Declaration Under Penalty of Perjury of Captain Toups, wherein Captain Toups declared he drove Mr. Bross to the northeast corner of the Zulu platform, a location where he could maintain visual contact with Mr. Bross; saw Mr. Bross moving around on the cellar deck of the Zulu structure; and ten minutes later, saw Mr. Bross falling from the cellar deck towards the water; Captain Toups stated during the fall, Mr. Bross's arms were located at his sides; Mr. Bross was in an upright position, and he did not appear to struggle to maintain his balance; Captain Toups did not see Mr. Bross move from side to side; Captain Toups stated Mr. Bross maintained this position until Mr. Bross struck his head on the boat landing on the north side of the platform, causing his head shortly thereafter to also strike the north boat landing. Captain Toups stated Mr. Bross's body, arms, hands, legs, feet, and head did not strike or otherwise come into contact with any object or things between the cellar deck and the section of the boat landing that he ultimately struck; thereafter, Mr. Bross's body was thrown into the water on the north side of the platform; at no time did Captain Toups see any portion of the platform or any other object falling with Mr. Bross or thereafter. (*See* Unsworn Declaration of Captain Toups, attached as Exhibit "A" to Doc. 190, Chevron's Pocket Brief Identifying Its Evidence Showing Whether and/or How Mr. Bross Fell Through an Open Hole in the Cellar Deck Relating to Docs. 126 and 179, at ¶9-15).

2. Unsworn Declaration of Glenn Williams and photographs attached thereto, showing the location of the hole Mr. Bross fell through, purporting to show Mr. Bross fell through a hole and not rotten grating. (*See* Unsworn Declaration of Glenn Williams, attached as Exhibit "B" to Doc. 190, Chevron's Pocket Brief Identifying Its Evidence

Showing Whether and/or How Mr. Bross Fell Through an Open Hole in the Cellar Deck Relating to Docs. 126 and 179, at ¶31-41).

3. The deposition testimony of Glenn Williams, which is consistent with Mr. Williams's Unsworn Declaration concerning the physical evidence he saw on February 28, 2006, when he investigated the platform following Mr. Bross's accident. This testimony purports to confirm Mr. Bross impacted the boat landing directly beneath the open hole, leaving behind parts of his hair and skin directly beneath the open hole through which Chevron contends Mr. Bross fell, as well as a gauge Mr. Bross presumably was holding. (*See* Deposition of Glenn Williams, pp. 99-100, attached as Exhibit "C" to Doc. 190, Chevron's Pocket Brief Identifying Its Evidence Showing Whether and/or How Mr. Bross Fell Through an Open Hole in the Cellar Deck Relating to Docs. 126 and 179). Chevron contends "[t]he uncontroverted evidence and the laws of gravity establish that Mr. Bross fell through [this] open and obvious hole. . ."

In response, plaintiffs do not offer evidence that controverts the declaration of Captain Toups or the circumstantial evidence presented by Mr. Williams. Rather, plaintiffs contend it is undisputed there was unsecured, damaged grating on the cellar deck of the platform at the time of the accident, and Chevron does not have a single witness who can testify – definitively – that Mr. Bross stepped through an open hole as opposed to defective grating that gave way when he stepped on it. Additionally, plaintiffs contend even if Mr. Bross stepped into an open hole, Chevron violated its own safety policy and federal regulations, which mandate that Chevron cover or guard any open holes on the platform.

This Court notes in arguing the hole in the cellar deck was open and obvious, Chevron *focuses on Mr. Bross's subjective knowledge*, to wit:

> Mr. Bross ***was intimately familiar with*** the progress of the post Hurricane Katrina repairs of Chevron's Marchand Bay Field......
>
> Mr. Bross ***knew that Zulu was damaged and had not been repaired*** as of February 28, 2006.......
>
> On February 24, 2006.......Mr. Bross......reported ......Zulu had no safe jack-up area,

and thus *he knew it was unrepaired*.......

Again, Mr. Bross *knew that Zulu's hurricane damage remained unrepaired*, when he boarded it on February 28, 2006.

[Mr. Bross] *knew it was closed and off limits until it was repaired.*

However, Louisiana law is clear the plaintiff's subject awareness of the risk is not the proper focus when analyzing the duty of a landowner to those on his premises, *even when there are apparent dangers present*. Rather, the duty which a landowner owes to persons entering his property is governed by a *standard of reasonableness*. *Murray*, 521 So. 2d at 1136. This Court comes back to the *Murray* decision, wherein the defendants argued they should not be liable because they had *no duty* to protect the decedent from a danger of which he had knowledge, contending they were not negligent because the decedent voluntarily encountered the risk. Holding defendants' argument would inject the "assumption of the risk" doctrine into the duty/risk analysis "through the back door," the court stated:

> A defendant's duty should not turn on a particular plaintiff's state of mind, but instead should be determined by the standard of care which the defendant owes to all potential plaintiffs. Here, for example, the defendants owed a duty to all potential users of the pool to operate that facility in a reasonably safe fashion. Further, the defendants faced strict liability under civil code article 2317[7] if the pool constituted an unreasonably dangerous thing over which they had custody and control.

*Murray*, 521 So.2d at 1136 (internal citation omitted).

The court went on to state:

The jury found that the pool was operated in an unreasonably dangerous manner after hearing evidence on the *__absence of warning signs regarding diving, the removal of the diving board and the absence of a lifeguard. The jury further determined that the unreasonably dangerous manner in which the pool was operated was a cause__*

---

[7] As stated previously, the *Murray* court stated its holding applies in cases of both strict liability and negligence.

*of the decedent's injuries and subsequent death. Once these determinations were made, it was then proper for the jury to consider the decedent's alleged fault. It would not have been proper for the jury to turn this analytical process on its head by finding, as urged by the defendants, that this particular plaintiff's knowledge of the risk rendered the pool operator free from fault. If such a finding were allowed to stand, the decedent's negligent disregard for the risk, i.e., his contributory negligence, would bar recovery despite defendants'* fault, and the comparative fault rules of article 2323 would be circumvented.

Again, this is not to say that a duty is owed or breached in all situations that involve injury. We have held, for example, that the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, *unreasonably* dangerous. *See, e.g., Shelton v. Aetna Casualty & Surety Co.,* 334 So.2d 406, 410-11 (La.1976). *However, the key to a finding of no liability in such cases is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody. The determination of what the plaintiff knew regarding the risk of injury is made after fault on the part of the defendant has been established, and is governed by the comparative fault principles ennunciated in La.Civ.Code art. 2323.*

*Id.* at 136 (emphasis added and in original). Subsequent Louisiana Supreme Court cases reaffirm the *Murray* decision. *See Socorro v. City of New Orleans*, 579 So.2d 931 (La.1991) (plaintiff's knowledge and conduct cannot be used to find that defendant did not owe a duty); *Pitre v. Louisiana Tech University*, 673 So.2d 585 (La.1996) (cited hereinabove). *See also Poindexter v. U.S. ex rel. Corps of Engineers*, 568 F.Supp.2d 729, 736 (W.D.La. 2008) (J. James) (court rejected defendant's argument it owed no duty to decedent, where decedent was personally aware of drowning risk; citing *Murray*, court held defendant's duty could not be defined in terms of plaintiff's subjective knowledge of the risk).[8]

---

[8] This Court is not bound by the decisions of other district courts in this district and cites the decision of Judge James for illustrative purposes only. This Court notes the defendant in *Poindexter* cited *Stiebing v. Romero*, 974 So.2d 752 (La. App. 5th Cir. 2007), also cited by Chevron in the instant case. In *Stiebing*, the plaintiff was hired by homeowners to help gut their home post-Hurricane Katrina. *Id.* Plaintiff sued the homeowners for injuries that she sustained after falling off of an unstable nightstand. *Id.* Despite noting plaintiff was aware of the possibility that

Thus, in *Murray*, the jury found the defendants *did* have a duty to the plaintiff, and that they breached that duty when they *failed to post warning signs on the pool, failed to have a lifeguard, and failed to remove the diving board.* Only *after* determining the fault of the defendants did the Court state it was appropriate to consider the comparative fault of the plaintiff. *Id.*

Similarly, in the instant case, the initial question in terms of Chevron's duty is not whether Mr. Bross knew about the condition of the platform, as indeed, there are questions of material fact concerning whether Mr. Bross was warned about the condition of the platform prior to the time he traveled to it on February 28, 2006, and this Court has already concluded summary judgment on that issue would be inappropriate at this juncture. Rather, the question is whether Chevron *acted reasonably vis-a-vis Mr. Bross*, or, stated another way, whether Chevron injured Mr. Bross through the instrumentality of an unreasonably dangerous thing – a platform with open holes, damaged grating, and missing handrails – that it owns. Only after the Court determines this issue does this Court consider the issue of what Mr. Bross knew regarding the risk of injury in light of the comparative fault principles governed by Article 2323 of the Louisiana Civil Code.

This Court concludes there are genuine issues of material fact regarding whether Chevron

---

the nightstand was unstable, the court found the homeowners did not breach their duty of care because the danger was self-evident to post-Katrina workers such as plaintiff. *Stiebing*, 974 So.2d at 757. In *Poindexter*, Judge James distinguished *Stiebing* and declined to follow its holding, noting "cases which discuss plaintiff's awareness of the risk of harm in conjunction with the duty owed by defendant are best understood as imprecise efforts by the courts to demonstrate that the complained-of condition was open and obvious to all similarly situated plaintiffs." *Poindexter*, 568 F.Supp.2d at 737.

This Court agrees. Furthermore, the *Stiebing* case is a state appellate district court case, while the *Murray* case is a Louisiana Supreme Court case that has not been overruled and has since been reaffirmed by subsequent Louisiana Supreme Court cases. Therefore, this Court does not find the *Stiebing* case controlling.

*See also Wallace v. Treasure Chest Casino, L.L.C.*, 920 So. 2d 251 (La. App. 5th Cir. 2005) (summary judgment was granted in favor of defendants on the "no duty" issue because plaintiff failed to carry its burden to produce factual evidence sufficient to dispute the absence of a genuine issue of material fact on the issue of whether a duty was owed. Therefore, this Court finds this case does not strongly support Chevron's position).

acted reasonably *vis-a-vis* Mr. Bross with regard to the condition of the platform. In response to Chevron's motion for summary judgment, plaintiffs have put forth the following evidence:

- Chevron knew of the dangerous condition of the platform as far back as September 9, 2005, yet failed to timely repair the damage, which included open holes and defective grating for almost six months after Hurricane Katrina;

- Chevron was negligent in failing to close and restrict access to the platform, including failing to post any "closed" or "off limits" signs on the platform; failing to take up the swing rope at the platform's boat landing, which left the platform accessible to anyone who wishes to board from a vessel; failing to tape off or barricade the stairwell leading from the boat landing to the cellar deck; and failing to prepare a list of "closed" platforms available to personnel until after Mr. Bross's death;

- Chevron failed to follow its own Guidelines for Guarding Deck Openings; and

- Chevron violated federal OSHA safety regulations by failing to cover holes in the platform.

Pursuant to *Pitre*, the obviousness and apparentness of the holes in the platform may be *relevant factors* to be considered in the determination of whether the platform posed an unreasonably dangerous risk of harm to Mr. Bross. However, the open and obviousness of the condition of the hole in question – or any other condition of the platform for that matter – does not serve to bar the plaintiffs' recovery at this juncture, where there are genuine issues of material fact concerning whether Chevron owed a duty to Mr. Bross vis-a-vis the condition of the Zulu platform.

Furthermore, this Court notes pursuant to Article 2323 of the Louisiana Civil Code, it is conceivable there could be negligence on the part of both Chevron and the plaintiff, that is, this Court could envision a scenario in which Chevron is liable for failing to restrict access to the platform, and Mr. Bross is deemed negligent for stepping into an open hole on the cellar deck of the platform.[9] Only after this Court hears all the evidence can the Court determine which party – or

---

[9] This is precisely the conclusion reached by the MMS (decisions made by both Mr. Bross and Chevron were "contributing factors" and "contributing causes" of the accident). *See* Exhibit "D," attached to plaintiffs' opposition brief to Chevron's motion for summary judgment, Doc. 187.

parties – were at fault and, if necessary, apportion fault in this matter pursuant to Article 2323.

Therefore, considering the burden of production associated with summary judgment motions, the legal presumptions which attach to evidence produced by a non-movant, and the prohibition against weighing evidence in this context, this Court finds the plaintiffs have produced sufficient summary judgment to demonstrate the existence of genuine issues of material fact as to Chevron's liability on the issue of the open and obvious condition of the hole through which Chevron contends Mr. Bross fell, and on the issue of Chevron's liability with regard to the unreasonably dangerous condition of the Zulu platform in general.

For the foregoing reasons,

IT IS ORDERED that "Chevron U.S.A., Inc.'s Motion for Summary Judgment Based Upon Open and Obvious Condition of the Zulu Structure" [Doc. 126] is DENIED in its entirety.

THUS DONE AND SIGNED in Lafayette, Louisiana on this __12__ day of August, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE