RECEIVED
AUG 19 2009
TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JILL P. BROSS, ET AL | CIVIL ACTION NO. 06-1523 |
| VERSUS | JUDGE DOHERTY |
| CHEVRON U.S.A., INC., ET AL. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court is "Chevron U.S.A., Inc.'s Second Motion for Partial Summary Judgment Against Qualitech Services, Inc." [Doc. 122] filed by defendant Chevron U.S.A., Inc. ("Chevron"). Chevron seeks "to enforce Qualitech's contractual obligations set forth in the Chevron U.S.A. Inc. Master Services Contract dated February 1, 2001, between Chevron and Qualitech (hereafter the "Qualitech Contract"), to defend and indemnify Chevron from the claims asserted by [p]laintiffs arising out of the alleged wrongful death of decedent, Alan Bross, a subcontractor/ contractor consultant of Qualitech." Chevron also seeks an order that "Qualitech must pay and/or reimburse Chevron for the attorneys' fees and costs incurred by Chevron in defense of [p]laintiffs' claims and in recovering contractual defense and indemnity from Qualitech."

At a telephone status conference with the Court on April 8, 2009, this Court ordered the parties to identify which issues remain pending before the Court for disposition prior to trial. The parties were given the opportunity to proceed with the motions they had already filed, or to file superseding, pared-down pocket briefs in lieu of their previously-filed motions. Chevron opted to file a superseding brief in connection with its Second Motion for Partial Summary Judgment [Doc.

122], which was filed on April 20, 2009 [Doc. 182]. In its superseding pocket brief, Chevron seeks summary judgment in the following particulars:

1. An order that Qualitech is obligated to fully defend and indemnify Chevron from any judgment in favor of plaintiffs or any settlement between Chevron and plaintiffs, and

2. An order that Qualitech must reimburse Chevron for its attorney's fees and costs incurred in:

    a. defending plaintiff's claims;

    b. pursuing contractual defense and indemnification from Qualitech; and

    c. pursuing insurance coverage and defense from Qualitech's insurers.

Qualitech filed a response brief [Doc. 184], and Evanston Insurance Company, which has an interest in the outcome of the defense and indemnity issue as the commercial liability carrier of Qualitech, filed a brief setting forth its position [Doc. 197]. Thereafter, Chevron filed a reply brief to Evanston's responsive brief [Doc. 211].

After consideration of all the briefs filed by the parties, the contract at issue, and the applicable law, this Court concludes Qualitech is obligated to fully defend and indemnify Chevron from and against all claims and liabilities for arising out of the injury and resulting death of Mr. Bross as a matter of law. Additionally, this Court concludes Qualitech is obligated to reimburse Chevron for its attorneys' fees and costs incurred in defending plaintiffs' claims and pursuing contractual defense and indemnification from Qualitech. However, this Court concludes Chevron is not entitled to reimbursement from Qualitech for attorneys' fees and costs incurred in pursuing insurance coverage and defense from Qualitech's insurers, as the Qualitech Contract does not

specifically provide for same.

Considering the foregoing, "Chevron U.S.A., Inc.'s Second Motion for Partial Summary Judgment Against Qualitech Services, Inc." [Doc. 122] is GRANTED IN PART AND DENIED IN PART, as more specifically discussed herein.

1. **The Undisputed Facts**

The undisputed facts that are materially relevant to the instant motion are as follows:

1. Alan Bross died on February 28, 2006 after falling from the cellar deck of Chevron's Zulu platform, located in the Grand Isle Area, Block 37, in the Gulf of Mexico on the Outer Continental Shelf.

2. On January 4, 2001, Mr. Bross and Qualitech executed a "Consultant and Inspection Agreement" pursuant to which Mr. Bross, as a "subcontractor," provided consulting services to Qualitech.[1]

3. Pursuant to a Master Service Contract between Qualitech and Chevron ("the Qualitech Contract"), Mr. Bross provided supervisory services for Chevron, supervising Chevron's contract diving crews and supervising the vessels on which the divers worked.

4. Article 9 of the Qualitech Contract is entitled "Claims, Liability and Indemnity" and contains the following subsection:

   **9.3 CONTRACTOR'S AND ITS SUBCONTACTORS' EMPLOYEES.**

   9.3.1 CONTRACTOR [QUALITECH] SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD COMPANY INDEMNITEES[2] [CHEVRON] HARMLESS FROM AND AGAINST ALL CLAIMS

---

[1] In a previous ruling, this Court concluded Mr. Bross was akin to an independent contractor *vis-a-vis* Qualitech and Chevron.

[2] "Company Indemnitee" is defined in the Qualitech Contract as "individually and collectively COMPANY and such companies or legal entities that now or may from time to time hold an economic interest in the Area of Operations, in the petroleum field(s) or prospect(s), pipelines or other facilities with which the Work is associated or in the petroleum produced or to be produced therefrom, or transported, stored or processed therein, each Affiliate of the foregoing and any officer, director, agent, representative, employee or insurer of any of them, but does not include contractors or subcontractors of any tier of any of the foregoing."

AND LIABILITIES FOR INJURY TO OR DEATH OF EMPLOYEES OF CONTRACTOR AND ITS SUBCONTRACTORS.

**9.8 SCOPE OF INDEMNITIES UNDER ARTICLES 9.1 THROUGH 9.7 AND ARTICLE 9.13**

THE RELEASE, DEFENSE AND INDEMNITY OBLIGATIONS OF THE PARTIES AS SET FORTH IN ARTICLES 9.1 THROUGH 9.7 SHALL APPLY TO ALL SUCH DEMANDS, LOSSES DAMAGES, LIABILITIES AND CLAIMS (AND ALL COSTS ASSOCIATED THEREWITH) HOWEVER CAUSED AND REGARDLESS OF THE SOLE, ACTIVE, PASSIVE OR CONCURRENT NEGLIGENCE OR STRICT LIABILITY OF ANY PARTY TO BE INDEMNIFIED THEREUNDER AND REGARDLESS OF WHETHER LIABILITY WITHOUT FAULT OR NEGLIGENCE PER SE IS IMPOSED OR SOUGHT TO BE IMPOSED ON ONE OR MORE OF THE PARTIES TO BE INDEMNIFIED.

**9.11 Defense of Claims, Costs and Attorneys' Fees in Connection with Any Claims or Litigation:**

9.11.3 CONTRACTOR [Qualitech] shall promptly pay: (1) to any COMPANY INDEMNITEE [Chevron] all costs and reasonable attorneys' fees incurred by such COMPANY INDEMNITEE [Chevron] resulting directly from any and all loss, injury, liability and claims for which CONTRACTOR [Qualitech] is obligated to indemnify such COMPANY INDEMNITEE [Chevron], and (b) exclusive of costs and attorneys' fees incurred in connection with arbitration under Article 17, COMPANY INDEMNITEES' costs and reasonable attorneys' fees incurred in enforcing the provisions of this Contract or in any legal action in which COMPANY [Chevron] or any COMPANY INDEMNITEE prevails, in whole or in part, brought against CONTRACTOR [Qualitech] based on the breach of this Contract or to enforce an arbitration award.

5. Article 10 of the Qualitech Contract – entitled Insurance contains the following subparts:

   10.1 Without in any way limiting CONTRACTOR's [Qualitech's]

> liability under Article 9, CONTRACTOR [Qualitech] shall maintain the following insurance and all such other insurance required by the applicable law.
>
> 10.1.2 Commercial General Liability (Bodily Injury and Property Damage) Insurance including coverages for premises operations, contractual liability, products and completed operations, sudden and accidental pollution coverage and (if applicable) explosion, collapse and underground hazards. The policy limits for such insurance shall be the combined limits of CONTRACTOR'S [Qualitech's] applicable primary, excess and umbrella policies but not less than Five Million U.S. Dollars ($5,000,000) per occurrence. All owned and non-owned watercraft exclusions must be deleted unless comparable coverage is provided under a policy of Protection and Indemnity Insurance.
>
> 10.2. ... The insurance specified in Articles 10.1.2 through 10.1.5 shall:
>
> 10.2.1 name the COMPANY INDEMNITIES [Chevron] as additional insureds with respect to operations performed under this Contract, to the extent of the indemnities and releases expressly assumed by CONTRACTOR [Qualitech] under this Contract[.]

Chevron contends that, pursuant to the foregoing provisions of the Qualitech Contract, Qualitech is obligated to defend and indemnify Chevron from and against any and all claims by plaintiffs related to the accident and resulting death of Mr. Bross, and Qualitech is obligated to reimburse Chevron for its attorneys' fees and costs incurred in defending plaintiffs' claims; pursuing contractual defense and indemnity from Qualitech; and pursuing insurance coverage and defense from Qualitech's insurers.

## III. Law and Analysis

### A. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### B. Substantive Law

This Court notes the usual rules of contractual interpretation determine the availability of indemnity under indemnity agreements. This Court has already determined the Qualitech Contract is a maritime contract.

As this court explained in *Brodie Simon v. International Marine, L.L.C.*, 2008 WL 4609989 *6 (W.D.La. 2008), the construction of a maritime contract is governed by maritime law. *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir.1986), citing *Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983); *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir.), cert. denied, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970). Under federal maritime law, "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir.1986).

"A maritime contract containing an indemnity agreement ... should be read as a whole and

its words given their plain meaning unless the provision is ambiguous." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir.1992), citing *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir.1984). *See also Fontenot*, 791 F.2d at 1214 (court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous); *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983). An indemnity clause will not afford protection unless its terms are expressed unequivocally. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th 1981). Interpretation of the terms of a contract is a matter of law, reviewable de novo on appeal. *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir.1985), citing *Kemp*, 745 F.2d at 924; *see also City of Austin v. Decker Coal Co.*, 701 F.2d 420, 425 (5th Cir.1983), cert. denied, 464 U.S. 938, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Matador Drilling Co v. Post*, 662 F.2d 1190, 1195 (5th Cir.1981).

1. **Defense and Indemnity**

In the instant case, Section 9.3.1 of the Qualitech Contract requires:

> 9.3.1 CONTRACTOR [QUALITECH] SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD COMPANY INDEMNITEES [CHEVRON] HARMLESS FROM AND AGAINST ALL CLAIMS AND LIABILITIES FOR INJURY TO OR DEATH OF EMPLOYEES OF CONTRACTOR AND ITS SUBCONTRACTORS.

Article 9.8 of the Qualitech Contract further defines the scope of indemnities under Article 9.3.1, as follows:

> 9.8 SCOPE OF INDEMNITIES UNDER ARTICLES 9.1 THROUGH 9.7 AND ARTICLE 9.13
>
> THE RELEASE, DEFENSE AND INDEMNITY OBLIGATIONS OF THE PARTIES AS SET FORTH IN ARTICLES 9.1 THROUGH 9.7 SHALL APPLY TO ALL SUCH DEMANDS, LOSSES

DAMAGES, LIABILITIES AND CLAIMS (AND ALL COSTS ASSOCIATED THEREWITH) HOWEVER CAUSED AND REGARDLESS OF THE SOLE, ACTIVE, PASSIVE OR CONCURRENT NEGLIGENCE OR STRICT LIABILITY OF ANY PARTY TO BE INDEMNIFIED THEREUNDER AND REGARDLESS OF WHETHER LIABILITY WITHOUT FAULT OR NEGLIGENCE PER SE IS IMPOSED OR SOUGHT TO BE IMPOSED ON ONE OR MORE OF THE PARTIES TO BE INDEMNIFIED.

In the instant case, plaintiffs contend Chevron was negligent and Chevron's negligence caused the wrongful death of Mr. Bross. Chevron argues under the foregoing express terms of the Qualitech Contract, Qualitech agreed to defend and indemnify Chevron from this type of claim brought by Qualitech's subcontractors.[3]

Qualitech concedes defense and indemnity is owed to Chevron. In responding to this Court's February 6, 2009 Minute Entry (Doc. 144) requesting the parties brief the issue of whether the Qualitech Contract was maritime in nature or subject to Louisiana law through OCSLA, Qualitech advised the Court: "If GML (general maritime law) applies, then indemnity and defense will be owed under the [Qualitech Contract] by [Qualitech] to Chevron and covered by [Qualitech's] CGL carrier, Evanston, under its policy's contractual liability coverage." (Doc. 150, p. 2.). Qualitech's pocket brief (Doc. 184) in response to the instant motion confirms that position, stating:

> In sum, [Qualitech] agrees that under the General Maritime Law, contractual indemnity and defense are owed by [Qualitech] to Chevron for the claims asserted by the plaintiffs against which Chevron is defending. [Qualitech] also agrees that it and its contractual liability insurers owe reimbursement of attorney's fees and costs to Chevron under the [Qualitech Contract] for the efforts of Chevron to obtain contractual indemnity and defense.

(Doc. 184, pp. 3-4.).

---

[3] This Court notes Chevron argues other portions of the Qualitech Contract, however, this Court need not consider those portions, as the Court concludes Qualitech owes defense and indemnity to Chevron pursuant to Articles 9.3.1 and 9.8 of the Contract.

Evanston Insurance Company's ("Evanston") argument that Qualitech owes no defense or indemnity to Chevron because the Qualitech Contract requires only that Qualitech defend and indemnify Chevron against claims of Qualitech's *employees* and Qualitech's *subcontractors' employees* – not Qualitech's subcontractors – is unavailing. Evanston argues Mr. Bross was neither a Qualitech employee nor an employee of a Qualitech subcontractor. Rather, Evanston contends Mr. Bross was a *Qualitech subcontractor*, and the plain language of Article 9.3.1 does not require Qualitech to defend and indemnify Chevron against the claims of Qualitech's subcontractors, only the subcontractors' employees. To the extent the Qualitech Contract is ambiguous, Evanston contends the contract should be construed against Chevron as the drafter of the contract.

Evanston's argument is unpersuasive for several reasons. First, Qualitech itself has conceded that, given this Court's finding that the Qualitech Contract is a maritime contract, defense and indemnity is owed by Qualitech to Chevron pursuant to the express terms of the contract. Furthermore, Evanston's current position is contrary to the position it took in its May 2, 2007 reservation of rights letter to Chevron, wherein Markel Underwriting Managers, on behalf of Evanston, advised:

> "As previously discussed, the Plaintiffs have filed suit against Chevron seeking damages in connection with Mr. Bross' death. <u>To the extent that Mr. Bross is considered an employee *or subcontractor* of Qualitech it would appear that the terms of the Master Service Agreement require Evanston to provide a defense to Chevron in the above-referenced matter."</u> . . . " In the event that it is determined that Mr. Bross is not an employee or subcontractor of Qualitech, Evanston reserves the right to withdraw from the Insured's defense, seek reimbursement from the Insured for any defense fees, costs or expenses or indemnification payments Evanston might make on its behalf, and to seek judicial determination as to whether Evanston has a duty to defend or indemnify the Insured in this matter."[4]

---

[4] *See* Letter from Terence J. Dahl, Environmental Claims Specialist for Market Underwriting Managers, Inc., to John T. Lewis of Chevron, dated May 2, 2007 letter, attached as Exhibit "A" to Chevron's Reply Memorandum, Doc. 211.

Thus, in Evanston's letter, Evanston did not distinguish between *subcontractors* and *employees of subcontractors*.

Nevertheless, this Court concludes, under the facts of this particular case, Mr. Bross falls within the definition of "subcontractor" or "subcontractors' employee[s]" for purposes of the Qualitech Contract. This Court has already concluded Mr. Bross was an independent contractor *vis-a-vis* Qualitech; therefore, he was a subcontractor. The only person performing the obligations of that subcontractor was Mr. Bross. Mr. Bross did not incorporate himself for purposes of this employment relationship, and there was no juridical entity separate and apart from Mr. Bross and his status as the sole subcontractor of Qualitech performing services for Chevron.[5] Thus, Mr. Bross is both the subcontractor and the sole employee of that subcontractor. Therefore, this Court concludes, as the sole subcontractor performing the work of Qualitech for Chevron, Mr. Bross was both the subcontractor and the employee of that subcontractor. If the subcontractor were to be deemed a separate juridical entity, then Mr. Bross is the employee of that subcontractor. If Mr. Bross is not a separate juridical entity, he is both the employee and the subcontractor, one and the same. For this Court to conclude otherwise would lead to an obvious absurd result.[6] Therefore, this Court concludes Qualitech is obligated to fully defend and indemnify Chevron from and against the claims of plaintiffs in the captioned matter.

---

[5] For this reason, it is unnecessary for the Court to examine the tax structure of Mr. Bross's unique and exotic employment relationship with Qualitech and Chevron.

[6] This Court finds Chevron's reliance on *Gilbert v. Offshore Production & Salvage, Inc.*, 1997 WL 149959, *aff'd*, 134 F.3d 368 (5th Cir. 1997), is misplaced. First, the language of the contractual indemnity provision at issue in *Gilbert* is dissimilar to the language of the contract at issue in the instant case, therefore, the cases are inapposite. Furthermore, the precise issue before this Court with respect to subcontractor status was not the focus of the *Gilbert* case, and there is no detailed treatment of the issue in either the decision of the district court or the Fifth Circuit. Therefore, it is not clear the argument set forth by Chevron with respect to the subcontractor issue was considered by the Fifth Circuit. For these reasons, this Court does not find the *Gilbert* case controlling.

2. **Attorneys' Fees**

Chevron seeks summary judgment on grounds it is undisputed Chevron is entitled to an order requiring Qualitech to reimburse Chevron for its attorney's fees and costs incurred in:

    a.    defending plaintiff's claims;

    b.    pursuing contractual defense and indemnification from Qualitech; and

    c.    pursuing insurance coverage and defense from Qualitech's insurers.

The relevant provision of the Qualitech Contract discussing attorneys' fees is located in Article 9, the section entitled "Defense of Claims, Costs and Attorneys' Fees in Connection with Any Claims or Litigation." Article 9.11.3 specifically addresses attorneys' fees, as follows:

> 9.11.3 CONTRACTOR [Qualitech] shall promptly pay: (1) to any COMPANY INDEMNITEE [Chevron] all costs and reasonable attorneys' fees incurred by such COMPANY INDEMNITEE [Chevron] resulting directly from any and all loss, injury, liability and claims for which CONTRACTOR [Qualitech] is obligated to indemnify such COMPANY INDEMNITEE [Chevron], and (b) exclusive of costs and attorneys' fees incurred in connection with arbitration under Article 17, COMPANY INDEMNITEES' costs and reasonable attorneys' fees incurred in enforcing the provisions of this Contract or in any legal action in which COMPANY [Chevron] or any COMPANY INDEMNITEE prevails, in whole or in part, brought against CONTRACTOR [Qualitech] based on the breach of this Contract or to enforce an arbitration award.

    a.    **reimbursement of attorneys' fees for defending plaintiff's claims and pursuing contractual defense and indemnification from Qualitech**

Qualitech does not dispute Chevron's entitlement to reimbursement for attorneys' fees and costs incurred in (1) defending plaintiffs' claims and (2) pursing contractual defense and indemnification from Qualitech, stating "[Qualitech and its contractual liability insurers would need

-13-

to reimburse Chevron for its attorney's fees and defense costs in defending against the plaintiffs' claims and in pursuing their rights to contractual indemnity and defense under the contract."

Qualitech further complied with its obligations under the Qualitech Contract to obtain insurance coverage in favor of Chevron, and named Chevron as an additional insured in at least one of those policies (the Evanston policy). Specifically, Qualitech contends it obtained primary CGL insurance coverage from Evanston, which included contractual liability coverage, and named Chevron as an additional insured as required under Section 10.2.1 of the Qualitech Contract, and further obtained excess liability coverage, including excess contractual liability coverage, from XL Specialty Insurance Company. Therefore, Qualitech contends to the extent Chevron's motion seeks partial summary judgment on grounds Qualitech did not fulfill its obligations to procure insurance coverage and have Chevron named as an additional insured pursuant to the Qualitech Contract, the motion should be denied.

Chevron, however, does not seek summary judgment on grounds Qualitech either did or did not obtain the required insurance coverage under the Qualitech contract. Rather, Chevron simply seeks, *inter alia*, summary judgment on grounds it is entitled to reimbursement of attorneys' fees in connection with defending the plaintiffs' claims and in pursuing defense and indemnity from Qualitech.

This Court has concluded Chevron is entitled to defense and indemnity from Qualitech. The Qualitech Contract expressly states "CONTRACTOR [Qualitech] shall promptly pay: (1) to any COMPANY INDEMNITEE [Chevron] all costs and reasonable attorneys' fees incurred by such COMPANY INDEMNITEE [Chevron] resulting directly from any and all loss, injury, liability and claims for which CONTRACTOR [Qualitech] is obligated to indemnify such COMPANY

INDEMNITEE [Chevron]," as well as "costs and reasonable attorneys' fees incurred in enforcing the provisions of this Contract or in any legal action in which COMPANY [Chevron] or any COMPANY INDEMNITEE prevails, in whole or in part, brought against CONTRACTOR [Qualitech] based on the breach of this Contract. . ."

Considering the foregoing, this Court concludes that, pursuant to the foregoing language, Chevron is entitled to reimbursement, from Qualitech, for attorneys' fees and costs incurred in (1) defending plaintiffs' claims and (2) pursing contractual defense and indemnification from Qualitech.

### b. reimbursement of attorneys' fees for pursuing insurance coverage and defense from Qualitech's insurers

With respect to Chevron's request for reimbursement of attorneys' fees for pursuing insurance coverage and defense from Qualitech's insurers, Qualitech states as follows:

> [Qualitech] agrees that insurance coverage should be owed to Chevron under both the Evanston and XL Insurance policies and that Chevron's claim for contractual indemnity and defense against [Qualitech] should be covered under both policies under their contractual liability coverage. Accordingly, it is [Qualitech's] position that Evanston and/or XL (depending upon the exhaustion of underlying limits) are responsible for reimbursing Chevron its full amount of attorney's fees and defense costs, including costs for pursuing contractual indemnity, and, *to the extent Chevron pursues insurance coverage under those policies, then also for those fees and costs. On the other hand, [Qualitech] denies that it owed reimbursement of any attorney's fees or defense costs expended by Chevron in pursuing insurance coverage, as [Qualitech] obtained the proper policies, and any decision by Evanston and/or XL with regard to such coverage was outside the control of [Qualitech] and thus it was a physical and legal impossibility for [Qualitech] to make Evanston and/or XL provide such coverage. Any reimbursement of fees and costs for the pursuit of insurance coverage should come directly from the denying insurance carrier.*

Additionally, Evanston Insurance Company filed a brief in response to Chevron's motion, contending "there is nothing in the [Qualitech] Contract related to Chevron's right to recover legal fees from Qualitech that are incurred to obtain insurance coverage."

Based upon the express language of the Qualitech Contract, this Court concludes Chevron is not entitled to reimbursement – *from Qualitech* – of attorneys' fees incurred in pursuing *insurance coverage and defense* from Qualitech's insurers. Applicable portions of the Qualitech Contract – while containing a specific provision for the recoupment of attorneys' fees in connection with the pursuit of defense and indemnity claims under the Contract -- do not contain a similar provision for recoupment of attorneys' fees incurred in pursuing insurance coverage and defense from Qualitech's insurers. No party has argued the existence of such a provision and such a provision is not readily apparent from this Court's review. Were the Contract drafted differently – that is, were there no section addressing recoupment of attorneys' fees in the section of the Contract addressing defense and indemnity, or were there a separate and independent section addressing recoupment of attorneys' fees and costs as to pursuit of insurance coverage – it might be argued it was the intention of the parties for the attorneys' fees and costs section to apply both to Section 10 of the Qualitech Contract dealing with insurance coverage and Section 9.3 dealing with defense and indemnity. However, the Qualitech Contract was not drafted in that manner, and this Court finds the Contract is unambiguous as drafted and expressly provides for payment of attorneys' fees incurred in pursuing defense and indemnity, but does not provide for payment of attorneys' fees incurred in pursuing insurance coverage and defense from Qualitech's insurers.[7]

Considering the foregoing, this Court concludes Chevron is not entitled to reimbursement, from Qualitech, for attorneys' fees and costs incurred in pursuing insurance coverage and defense

---

[7] Section 10.2.1 of the Qualitech Contract specifically requires that Chevron be named as an "additional insured with respect to the operations performed under the Contract." Qualitech argues it named Chevron as an additional insured under the Evanston policy. Whether this would permit Chevron to maintain a direct action against Evanston for attorneys' fees is a matter that is not before this Court at this time.

from Qualitech's insurers.

IT IS ORDERED that "Chevron U.S.A., Inc.'s Second Motion for Partial Summary Judgment Against Qualitech Services, Inc." [Doc. 122] filed by defendant Chevron U.S.A., Inc. ("Chevron") is GRANTED IN PART AND DENIED IN PART.

IT IS ORDERED THAT Qualitech is obligated to fully defend and indemnify Chevron from and against the claims of plaintiffs in the captioned matter.

IT IS FURTHER ORDERED THAT Chevron is entitled to reimbursement, from Qualitech, for attorneys' fees and costs incurred in (1) defending plaintiffs' claims and (2) pursing contractual defense and indemnification from Qualitech.

IT IS FURTHER ORDERED THAT Chevron is not entitled to reimbursement, from Qualitech, for attorneys' fees and costs incurred in pursuing insurance coverage and defense from Qualitech's insurers.

THUS DONE AND SIGNED in Lafayette, Louisiana on this 19 day of August, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE